## THE PRESIDENT, DIRECTORS & COMPANY OF THE GREENFIELD BANK *vs.* THOMAS CRAFTS.

Proof that in one instance the use by a son of his father's name upon negotiable paper discounted at a bank was known and acquiesced in by the father does not authorize the introduction in evidence of subsequent similar acts, for the purpose of showing an implied authority in the son to sign his father's name, without proof that these also were known and acquiesced in by him.

The receipt of a notice of protest from a notary public by one whose name has been signed to negotiable paper by another, does not make it incumbent on him, as a legal duty, to disclaim the genuineness of the signature of his name, but his omission to do so is competent evidence to be submitted to the jury, as a circumstance tending to show that the signature was put upon the paper by his authority.

In an action upon several drafts, upon which the name of the defendant has been put by
another person, if there is evidence tending to prove a ratification and adoption by the
defendant of a portion of them, and evidence tending to prove an original implied au-
thority to sign the defendant's name upon all of them, it is the duty of the court to call
the attention of the jury to the proper application of the evidence to the different drafts
declared on, and to limit the evidence of ratification to those drafts to which it is prop-
erly applicable; and an omission to do so is sufficient reason for setting aside a general
verdict for the plaintiffs.

CONTRACT upon a note bearing the defendant's name as joint
maker with Martin Crafts, and three drafts drawn by Martin
Crafts and bearing the defendant's name as indorser. The de-
fence was that the signatures of the defendant's name were
forged. All of this paper was payable in Boston, and the dates
at which the same fell due were November 26, December 8, 16,
and 22, 1860, respectively.

At the trial in the superior court, before *Wilkinson*, J., there
was no evidence that the defendant personally signed his name
to any of the paper in suit, or ever gave express authority to any
one to sign it there.

Edmund W. Russell, the plaintiffs' cashier, was called by
them as a witness, and testified, under objection, that a draft
similar in form and handwriting to those in suit, held by the
plaintiffs, had been protested in September previous, in Boston,
and he had forwarded to the defendant a notarial notice thereof
received from Boston, and had received no reply: but the draft
was shortly after paid by Martin. A duplicate of the notice
was put into the case, and purported to be issued by a notary
public in Boston, and contained no statement of the name or
residence of the holder of the draft. The witness further testi-
fied that he forwarded similar notices as the drafts in suit fell
due, and that, on the 13th of December, he addressed a letter to
the defendant, informing him of the overdue paper then held by
the bank, and requesting his immediate attention to the same, to
which he received no reply; that on the 17th of December he
went to see the defendant, and had an interview with him, in
which the defendant admitted the receipt of the letter of Decem-
ber 13th; and the draft which had become due on the 16th
was also spoken of; and the defendant in no way expressed or

intimated that the paper was not genuine, but gave assurances that the same should be paid. Nothing was said, however, about any other paper than that before referred to. Two days afterwards, another son of the defendant informed the witness that the signatures were forged. The letter of December 13th was put into the case.

Rufus A. Packard, cashier of the Franklin County Bank, in Greenfield, testified, against the defendant's objection, that drafts similar in form and handwriting to those in suit had been discounted for Martin Crafts at that bank; that one fell due January 12, 1858, and was protested in Boston, and a notice forwarded to the defendant, and no reply was received from him; and that since that time the Franklin County Bank has discounted for Martin Crafts some twenty or thirty pieces of similar paper, with the same names and in the same handwriting.

There was evidence tending to show that the notices mentioned by Russell and Packard were received by the defendant, and the jury were instructed to disregard their testimony as to sending notices, unless it was proved that they were so received. There was also evidence of the receipt by the defendant of other similar notices of protests of paper to which his name had been put by his son, and that he had made no disavowal or repudiation thereof.

The judge instructed the jury, amongst other things, that, " in order to make any of the defendant's acts' and admissions and omissions evidence, the jury must be satisfied they were done and made under a full knowledge of the use which had been made of his name; that, in order to make the silence of the defendant as to the forgery or genuineness of his signature to the note and drafts evidence of ratification and adoption, the jury must be satisfied that he was fully informed of the fact of his signature upon the note and drafts, and that such silence showed a want of duty on his part, and was intended or calculated to mislead and prejudice the plaintiffs; that if the defendant was fully informed, at the time he received notices of the protests, or the letter of the cashier, or at the time of the interview between himself and the cashier, of the use which had been made of his name upon

the note and drafts, it was his duty, at once or within a reasonable time, to express his dissatisfaction therewith, or repudiation of any authority so to use his name, and that whether he had so done was a question for the jury, under all the circumstances." Other questions arose at the trial, which are not now material to be stated.

The jury returned a verdict for the plaintiffs for the amount of the note and all the drafts, and the defendant alleged exceptions.

*J. Wells,* for the defendant.

*C. Allen,* for the plaintiffs.

BIGELOW, C. J.    Several of the rulings at the trial of this case seem to us to have been erroneous.

1. We are unable to perceive how the testimony of Packard, cashier of the Franklin County Bank, concerning drafts other than the one falling due January 12th 1858, could have been competent to affect the defendant.    There was no proof which tended to bring home knowledge of the existence of these drafts to him.    The fact that they were indorsed in his name, and in the same handwriting with those declared on, had no tendency to show that he had authorized his son to place his signature on the note and drafts which are the subject of this suit.    An authority could be implied only from a course of dealing which was known to the defendant, or from a knowledge of and acquiescence in the use of his name by his son in the manner in which it had been placed on the negotiable paper held by the plaintiffs.    As there was no evidence to show that the defendant had any notice of the twenty or thirty drafts which were discounted by the Franklin County Bank after January 1858, all proof concerning them was irrelevant, and had a tendency to mislead the jury.    It was, in effect, an attempt to charge the defendant on drafts which he alleged to have been forged, by proof that a large number of other similar drafts had been in circulation, of the existence of which it was not shown he had any knowledge.    In other words, the evidence tended to render the defendant liable on one class of forged paper, by the mere proof that other similar paper had been in existence.    This was clearly erroneous.

2. The court also erred in instructing the jury that it was the duty of the defendant, on receiving notices of the protests of the note and drafts declared on, to express dissatisfaction with the use which had been made of his name, or to repudiate the genuineness of the indorsements on the paper held by the plaintiffs. This was a misdirection as to the legal duty of the defendant. It led the jury to believe that the defendant was to be held liable in this action by a mere omission to disclaim in express terms to the plaintiffs, after receiving notice of the existence of the note and drafts from the notary, the genuineness of the indorsements or the authority of his son to place his name as an indorser thereon. No such duty was imposed on him by law. A protest of a note or draft is made for the purpose of fixing the liability of the indorser or drawer by a seasonable notice that due demand has been made upon the promisor or acceptor. Notice of a protest requires no answer and calls for no action on the part of the person to whom it is addressed. He has a right to remain silent, and to stand on hi· legal rights as to his liability as a party to the note or draft t · which it relates. No duty to disclaim or repudiate the paper i thereby imposed on him, and no absolute inference as to his lia bility thereon is to be drawn from a mere omission to disown o disavow the contract on which he is sought to be charged. We do not mean to say that evidence of the neglect or omission of the defendant to say or do anything concerning the paper bearing his name which was held by the plaintiff, and of which he had notice from the notary, was inadmissible. On the contrary, it was admissible as leading to an inference that he did not act as men ordinarily would under like circumstances. If the jury were of opinion that a man receiving direct notice that he was to be held liable on negotiable paper to which his signature was affixed neither by himself or by his authority, would without delay disclaim and repudiate it, then they were at liberty to infer that the conduct of the defendant showed that he either wrote or authorized the signatures. But he was not bound as a matter of duty to make such disclaimer or repudiation, or else be held liable on the drafts; and this was the error in the instructions.

The court told the jury that it was the legal duty of the defendant to disclaim and repudiate the note and drafts, instead of directing them that his silence and omission to declare the indorsements to be forgeries were to be taken into consideration as a circumstance tending to show that the signatures were put on the paper by the defendant, or by his authority.

3. There was another error in the instructions in relation to the draft which was not due at the time of the interview between the plaintiffs' cashier and the defendant. There is no evidence to show that the defendant knew of the existence of any draft in the hands of the plaintiffs which had not then matured. The conversation related solely to those which had fallen due previously to the interview. In this state of the proof, it is clear that there was nothing on which to base an inference that the draft which was not due at the time of the interview was ratified or adopted by the defendant. He could not authorize or sanction an act of which he had no knowledge. Ratification or adoption necessarily implies that the principal had some notice of the transaction of his agent to which he intended to give his assent. The court omitted to call the attention of the jury to the proper application of the evidence to the different drafts declared on, as tending to charge the defendant on the ground that he had originally authorized the indorsements or subsequently sanctioned them. Upon that which fell due subsequent to the interview with the cashier on the seventeenth of December, he was liable only on the ground that he had given to his son a previous authority to place his name on the drafts.

Upon these grounds we are of opinion that the verdict rendered for the plaintiffs cannot be supported. If the plaintiffs, upon another trial, are able to obtain a verdict on evidence which is competent, and under instructions to which no valid exception can be taken, it will be proper to consider and determine the other questions which were discussed in the argument.

*Exceptions sustained.*